DONOVAN v. WEED et al.

(Supreme Court, Appellate Division; Second Department. July 24, 1903.)

1. BROKERS—COMMISSIONS—PROCURING PURCHASER—EVIDENCE.
    In an action to recover a broker's commission on the sale of land, evidence *held* sufficient to require the submission to the jury of the question whether plaintiff was the procuring cause of the purchase.

2. SAME—INSTRUCTIONS—ERROR—CURED BY REMARKS.
    The error, if any, in court's statement in the charge, in an action to recover a broker's commission on the sale of land, that plaintiff found the purchaser was beyond question, was cured by the court's remark that the expression was an unfortunate one; that defendant employed plaintiff to present the land as a subject of purchase, as his broker, to the purchaser, and, if he did, that it did not matter whether plaintiff found the purchaser or whether the purchaser was not lost.

Appeal from Trial Term, Richmond County.

Action by Richard J. Donovan against William R. Weed and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Theodore A. Swift (William A. Shortt, on the brief), for appellants.
Albert A. Wray (Parker K. Deane, on the brief), for respondent.

GOODRICH, P. J. The plaintiff has recovered a verdict for broker's commissions upon the sale of 4,000 acres of Adirondack land to Mr. A. A. Low in the early part of 1901. At the trial the defendants' counsel said:

"This land was sold to Mr. A. A. Low. If Mr. Donovan brought about that sale, he is entitled to a commission for making that sale. We do not object to any evidence which shows that he made a sale to Mr. Low."

This admission practically narrowed the issue to the question whether the plaintiff was the procuring cause of the sale to Mr. Low. In October, 1898, the plaintiff wrote the defendant William R. Weed a letter, in answer to one received from him, in which, after referring to the land, he said:

"I note that you say the price is $7.50 per acre; no commission at that price. Now, the only way that I could handle this satisfactory to all parties concerned would be to charge a fixed commission for a selling price; no matter what that price might be. I would be willing to take the matter up and go to work on it immediately and charge you a commission of 10% of the selling price. If you desire to have me go into the matter, I would like a blue print, if you have one, or a good map of any kind showing the bodies of water on the land, together with the relation the land bears to the railroad, and adjoining land owners."

In January, 1899, Weed called on the plaintiff in New York City, and had a conversation with him in regard to the matter, and the interview eventuated in the following letter:

"Lenney & Donovan, Counselors at Law, 120 Broadway.

"New York, January 12th, 1899.
"R. J. Donovan, Esq., New York—Dear Sir: We will sell you our land in Bog River, Township Oakham, comprising about 4500 acres for $6.00 per acre less 10% com. to you, we to have the right to cut and remove the spruce timber and pulp wood and the right to the use of the lands for the purpose of lumbering in the usual manner of lumbering and we agree to cut and remove the timber and pulp wood within six years or we will sell the whole amount of land without any restrictions for $10.00 per acre less 10% com. The title is perfect and a warranty deed will be given, the above com. to be paid should price per acre be less as agreed between us and Mr. Donovan.
"William R. & Frederic A. Weed,
"Per W. R. Weed."

In June, 1900, the plaintiff went to the Adirondacks to see Mr. Low at his place at Horseshoe Pond, and testified that he told him about the property and its advantages, and about the lakes and streams and the timber upon it; that he had a long interview with him. Mr. Low said that he would consider the property, and, although he said he would not give any definite reply at that time, he might do something about it. The plaintiff again went from New York to Horseshoe Pond, and saw Mr. Low, later in the summer, when Mr. Low wanted some blue prints and surveys showing the location of the property, its size, and the lakes, etc. The plaintiff obtained blue prints from Weed, and gave them to Mr. Low, and afterwards saw him twice during the season, and in August and September wrote Weed several times about the matter. On August 28th the plaintiff obtained from the defendants an option to purchase the land at $9 per acre, with a letter to the plaintiff, saying:

"If the sale is consummated we will pay you only a commission of 50 cents per acre."

The plaintiff at once communicated with the defendants, repudiating that amount of brokerage commissions, and had an interview with Frederic A. Weed, which resulted in the following letter from the defendants:

"August 31st, 1900.

"Mr. R. J. Donovan, Malone, N. Y.—Dear Sir: We will give you one dollar per acre commission if you bring about a sale of our Oakham land at $9.00 per acre. We to have $8.00 per acre net land & water. This option for thirty days.

"Yours truly,                    W. R. & F. A. Weed."

After the introduction of these letters in evidence, defendants' counsel made the concession already quoted. On January 12, 1901, the defendants wrote the plaintiff a letter canceling his employment, saying:

"We have withdrawn the land from sale and will not allow you any commission."

It is proven that Mr. Low bought the property in February, 1901, at $8 per acre, the deed being given to him in April.

I have not stated the entire evidence on the question of the plaintiff's agency in effecting the sale to Mr. Low, but it was sufficient to require the submission to the jury of the question whether the plaintiff was the procuring cause of the purchase by Mr. Low. While it would have been more satisfactory if Mr. Low had been called as a witness, it must be observed that it was within the power of the defendants to do so, and the failure to call him does not militate exclusively against the plaintiff, who, as already intimated, had produced evidence sufficient to establish his cause of action. There was also evidence offered by the defendants from which the jury might have inferred that the plaintiff was unfaithful to the interests of the defendants, growing out of the Conklin option, which, if unexplained, might have defeated his claim for brokerage commissions; but there was also evidence that, after the defendants knew all the circumstances, they renewed and confirmed their negotiations with him for the sale. The court carefully instructed the jury upon these subjects, submitting to them three questions:

"First. Was this sale a sale that was brought by his efforts, by his services, as the efficient cause? Second. Was he guilty of any infidelity to their interests which would forfeit his right to a commission? Third. If so, did they forgive him?"

The jury found for the plaintiff on all these questions, and we see no reason to disturb their verdict.

The exception to the refusal to dismiss the complaint is sufficiently passed upon by the foregoing statement. I find no exceptions to the admission or exclusion of evidence which require discussion. The defendants excepted to the statement in the charge "that he [the plaintiff] found Mr. Low in this case is beyond question." The court said:

"If I used that expression, it was, perhaps an unfortunate one. They employed plaintiff, however, to present this property, as a subject of purchase,

as their broker, to Mr. Low. They employed him to do that, and, if they did, it does not matter whether he found him, or whether Mr. Low was not lost."

If the original remark of the court, taken with its connection was error—and I do not think it was—it was corrected by the court. The other exceptions to the charge are not tenable.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.